BEAM, JUSTICE,
FOR THE COURT:
¶ 1. The State appeals from the Sunflower County Circuit Court’s order granting partial relief on Michael Drankus’s motion for declaratory and injunctive relief. Dran-kus, an inmate in the custody of the Mississippi Department of ■ Corrections (MDOC), sought a declaratory judgment that Mississippi Code Section 47-7-3.1 is a mandate to MDOC which requires MDOC *1234 to develop a “case plan” for all parole-eligible inmates and that MDOC is in violation of that section. Drankus also sought an order that would reverse an adverse decision by MDOC’s Administrative Remedy Program (ARP); an injunction directing MDOC to promulgate policies and pro,-cedures that comply with Section 47-7-3.1; and an order directing MDOC to develop a case plan for Drankus. The circuit court ruled only on MDOC’s adverse ARP decision, found that, based on the circuit court’s interpretation of Section 47-7-3.1, Drankus is entitled to receive a case plan pursuant to Section 47-7-3.1, and so ordered. MDOC appeals that decision. Finding that Drankus is not entitled to a case plan, we reverse the circuit court’s order.
FACTS AND PROCEDURAL HISTORY
¶2. In August 2014, Drankus filed an ARP request with MDOC that he be issued a case plan pursuant to “Section 43 of House Bill 585 (2014),” prescribing that “all inmates who are eligible for parole are to be issued a case plan to guide in their rehabilitation while in the custody of MDOC.”[1]
¶ 3. In October 2014, MDOC issued its “first step response” to Drankus’s ARP request, denying the request on the basis that “[House] Bill 585 does not apply to [Drankus], due to [the fact he was] sentenced in 1987[;] [t]he Bill only affect[s] offenders who [were] sentenced on or after [July 1, 2014] and the Bill is not retroactive.”
¶ 4. In November 2014, Drankus proceeded to “step two” of the ARP. In his “step two” appeal, Drankus again contended that “Section 43 of [HB] 585 (which was codified as Mississippi Code Section 47-7-3.1)[2] was created so that all parole-eligible inmates would be issued ‘case plans’ to guide in their rehabilitation during incarceration.” Drankus asserted that “[b]y law, I am entitled to have a case plan,” and repeated his “request[ ] that the MDOC develop one for me and provide me a written copy.”
¶ 5. In December 2014, MDÓC issued its “second-step response,” maintaining that Drankus is ineligible to receive a case plan because he was sentenced in 1987 and HB 585 applies only to those parole-eligible inmates sentenced on or after July 1, 2014.
¶ 6. Drankus thereafter sought judicial review of MDOC’s ARP decision in the Sunflower Circuit Court. After reviewing Drankus’s ARP request and MDOC’s response, the circuit court held that “Miss. Code Ann. § 47-7-3.1 is plain and unambiguous in stating that, ‘the department shall develop a case plan for all parole eligible inmates to guide an inmate’s rehabilitation while in the department’s custody and to reduce the likelihood of recidivism after release.’ ” Acknowledging Drankus’s reference to newly enacted Mississippi Code Section 47-7-18(l)(a), the circuit court agreed with Drankus’s argument that the Legislature intended to create a statutory scheme which must be read collectively in order to understand its intent to address parole eligibility and that MDOC’s failure to give Drankus a case plan would thwart the Legislature’s intent. Accordingly, the circuit court or *1235 dered that Drankus, “whom [MDOC] admits in its response is a parole eligible inmate, is entitled to a case plan pursuant to the statutory mandate.”
ANALYSIS
¶ 7. MDOC contends Drankus is ineligible to receive a parole case plan pursuant to the provisions of Section 47-7-3.1 and that the language contained in Section 47-7-3.1 requires the issuance of parole case plans to apply prospectively rather retrospectively. Specifically, MDOC points to Section 47-7-3.1(2), which states “Within ninety (90) days of admission, the department shall complete a case plan on all inmates —,” and Section 47-7-3.1(4), which states, “The department shall ensure that the case plan is achievable prior to the inmate’s parole eligibility date.” MDOC contends that it would be impossible for MDOC tó comply with the statute as drafted if it were applied retroactively to offenders such as Drankus, who were convicted and sentenced prior to July 1, 2014, the date Section 47-7-3.1 went into effect.
¶ 8. MDOC further contends the circuit court failed to consider the interaction and language present in Mississippi Code Section 47-7-18, which MDOC refers to as the “presumptive parole statute,”[3] which also went into effect on July 1, 2014. MDOC says it is clear Drankus is ineligible for “presumptive parole,” because his parole-eligibility date is more than eighteen years in the past, occurring on July 11, 1997.
¶ 9. An agency’s interpretation of its governing statutes is a question of law, subject to de novo review, but with deference to the agency’s interpretation. Diamond Grove Ctr., LLC v. Miss. State Dep’t of Health, 98 So.3d 1068, 1071 (Miss. 2012). Unless an agency’s interpretation of a statute “is repugnant to the plain meaning thereof, [the courts are] to defer to the agency’s interpretation.” Id. (quoting Queen City Nursing Ctr., Inc. v. Miss. State Dep’t of Health, 80 So.3d 73, 84 (Miss. 2011)). “This does not mean we ‘yield judgment or opinion’ to an agency’s statutory interpretation, as ‘[t]he ultimate authority and responsibility to interpret the law, including statutes, rests with this Court.’” Id. “Rather, when determining the most reasonable and appropriate interpretation of a statute, the agency’s interpretation is an important factor that usually warrants strong consideration.” Id. “[C]ourts will not, however, give deference to an agency’s statutory interpretation if it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, or contrary to the unambiguous language or best reading of a statute.” Dialysis Sols., LLC v. Miss. State Dep’t of Health, 31 So.3d 1204, 1211 (Miss. 2010).
¶ 10. Here, we find MDOC’s interpretation of Section 47-7-3.1 to be reasonable and not inconsistent with the language of the statute and ascertainable legislative intent. As MDOC points out, Section 47-7-3.1 contains operative mandates which indicate that the section’s parole-case-plan directive was intended to apply prospectively. Subsection (2) says MDOC shall complete a case plan for all inmates within ninety days of an inmate’s admission. Miss. Code Ann. § 47-7-3.1(2). And paragraph (a) in subsection (3) says a caseworker shall notify the inmate of his parole eligibility date within ninety days of the inmate’s admission. Miss. Code Ann. § 47-7-3.1(3)(a). None of these provisions can be met in Drankus’s case, since he was admitted into MDOC’s custody in 1987.
*1236 ¶11. Also indicative that this section was, as MDOC interprets, intended to apply, prospectively, is subsection (4)’s mandate that MDOC “shall ensure that the case plan is achievable prior to [an] inmate’s parole eligibility date” Miss. Code Ann. § 47-7-3.1(4) (emphasis added). Though we do not have the numbers before us, we know there are numerous inmates like Drankus whose initial parole-eligibility dates passed prior to the 2014 amendments to the probation and parole chapter. Some of these inmates, like Dran-kus, have been granted parole and subsequently have had their parole revoked, and they may or may not have been granted another “potential” opportunity for parole in the future, given former Mississippi Code Section 47-7-27.[4]
¶12. Nothing in the 2014 amendments addresses such circumstances. And this leaves us guessing at the Legislature’s intent.
¶ 13. The longstanding rule in Mississippi is that “statutes will be construed to have a prospective operation oniy, unless a contrary contention is manifested by the clearest and most positive expression.” Hudson v. Moon, 732 So.2d 927, 930-31 (Miss. 1999) (citing Anderson v. Jackson Mun. Airport Auth., 419 So.2d 1010, 1026 (Miss. 1982)). “A statute will not be construed to be retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is.” Id. at 931; see also Gray v. Morgan, 236 Miss. 245, 110 So.2d 346 (1959) (“where the intention of the legislature to make the statute retroactive is not stated in express terms, or clearly, explicitly, positively, unequivocally, unmistakably, and unambiguously shown by necessary implication or terms which permit no other meaning to be annexed to them, preclude all question in regard thereto, and leave no reasonable doubt thereof’).
¶ 14, That rule applies here, as MDOC elucidated. Because Section 47-7-3.1 does not clearly and unequivocally express an intention for retroactive applicability, we cannot say that Section 47-7-3.1 applies to Drankus.
CONCLUSION
¶ 15. For these reasons, we reverse the circuit court’s order requiring that Dran-kus be issued a case plan under- Section 47-7-3.1 and affirm MDOC’s ARP decision that Drankus is not entitled to a case plan.
¶ 16. REVERSED AND RENDERED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, COLEMAN AND MAXWELL, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED. IN PART BY KITCHENS, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.
APPENDIX
§ 47-7-3.1. Case plan for parole eligible inmates
(1) In consultation with the Parole Board, the department shall develop a case plan for all parole eligible inmates to guide an inmate’s rehabilitation while in the department’s custody and to reduce the likelihood of recidivism after release.
(2) Within ninety (90) days of admission, the department shall complete a case plan on all inmates which shall include, but not [be] limited to:
*1237 (a) Programming and treatment requirements based on the results of a risk and needs assessment;
(b) Any programming or'treatment requirements contained in the sentencing order; and
(c) General behavior requirements in accordance with the rules and policies of the department.
(3) The department shall provide the inmate with a written copy of the case plan and the inmate’s caseworker shall explain the conditions set forth, in the case plan.
(a)Within ninety (90) days of admission, the caseworker shall notify the inmate of their parole eligibility date as calculated in accordance with Section 47-7-3(3);
(b) At the time a parole-eligible inmate receives the case plan, the department shall send the ease plan to the Parole Board for approval.
(4) The department shall ensure that the case plan is achievable prior to inmate’s parole eligibility date,
(5) The caseworker shall meet with the inmate every eight (8) weeks from the date the offender received the case plan to review the inmate’s case plan progress.
(6) Every four (4) months the department shall electronically submit a progress report on each parole-eligible inmate’s case plan to the Parole Board. The board may meet to review an inmate’s case plan and may provide written input to the caseworker on the inmate’s progress toward completion, of the case plan.
(7) The Parole Board shall provide semiannually to the Oversight Task Force the number of parole hearings held, the number of prisoners released to parole without a hearing and the number of parolees released after a hearing.
§ 47-7-18. Hearing for release
(1) Each inmate eligible for parole pursuant to Section 47-7-3, shall be released from incarceration to parole supervision on the inmate’s parole eligibility date, without a hearing before the board, if:
(a) The inmate has met the requirements of the parole case plan established pursuant to Section 47-7-3.1;
(b).A victim of the offense has not requested the board conduct a hearing; .
(c) The inmate has not received a serious or major violation report within the past six (6) months;
(d) The inmate has agreed to the conditions of supervision; and
(e) The inmate has a discharge plan approved by the board.
(2) At least thirty (30) days prior to an inmate’s' parole eligibility date, the department shall notify the board in writing of the inmate’s compliance or noncompliance with the case plan. If an inmate fails to meet a requirement of the case plan, prior to the parole eligibility date, he or she shall have a hearing before the board to determine if completion of the case plan can occur while in the community.
(3) Any inmate for whom there is insufficient information for the department to determine compliance with the case plan shall have a hearing with the board.
(4) A' hearing shall be held with the board if requested by the victim following -notification of the inmate’s parole release date pursuant to Section 47-7-17.
(5) A hearing shall be held by the board if a law enforcement official from the community to which the inmate will re *1238 turn contacts the board or the department and requests a hearing to consider information relevant to public safety-risks posed by the inmate if paroled at the initial parole eligibility date. The law enforcement official shall submit an explanation documenting these concerns for the board to consider.
(6) If a parole hearing is held, the board may determine the inmate has sufficiently complied with the case plan or that the incomplete case plan is not the fault of the inmate and that granting parole is not incompatible with public safety, the board may then parole the inmate with appropriate conditions. If the board determines that the inmate has sufficiently complied with the case plan but the discharge plan indicates that the inmate does not have appropriate housing immediately upon release, the board may parole the inmate to a transitional reentry center with the condition that the inmate spends no more than six (6) months in the center. If the board determines that the inmate has not substantively complied with the requirement(s) of the case plan it may deny parole. If the board denies parole, the board may schedule a subsequent parole hearing and, if a new date is scheduled, the board shall identify the corrective action the inmate will need to take in order to be granted parole. Any inmate not released at the time of the inmate’s initial parole date shall have a parole hearing at least every year. (Former) § 47-7-27. Return of violator of parole or earned release supervision; arrest of offender; revocation of parole; board and hearing officers authorized to administer oaths and summon witnesses.
The board is hereby authorized at any time, in its discretion, and upon a showing of probable violation of parole, to issue a warrant for the return of any paroled offender to the custody of the Mississippi Department of Corrections. Such warrant shall authorize all persons named therein to return such paroled offender to actual custody of the Department of Corrections from which he was paroled. Pending hearing, as hereinafter provided, upon any charge of parole violation, the offender shall remain incarcerated in any other place of detention designated by the department.
Any field supervisor may arrest an offender without a warrant or may deputize any other person with power of arrest to do so by giving him a written statement setting forth that the offender has, in the judgment of that field supervisor, violated the conditions of his parole or earned-release supervision. Such written statement delivered with the offender by the arresting officer to the official in charge of the department facility from which the offender was released or other place of detention designated by the department shall be sufficient warrant for the detention of the offender.
The field supervisor, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation. The field supervisor shall at once notify the board or department of the arrest and detention of the offender and shall submit a written report showing in what manner the offender has violated the conditions of parole or earned-release supervision. An offender for whose return a warrant has been issued by the board shall, after the issuance of such warrant, be deemed a fugitive from justice.
The law now in effect concerning the right of the State of Mississippi to extradite persons and return fugitives from *1239 justice, from other states to this state, shall not be impaired by this chapter and shall remain in full force and effect. An offender convicted of a felony committed while on parole, whether in the State of Mississippi or another state, shall immediately have his parole revoked upon the presentment of a certified copy of the commitment order to the board. If an offender is on parole and the offender is convicted of a felony for a crime committed prior to the offender being placed on parole, whether in the State of Mississippi or another state, the offender may have his parole revoked upon presentment of a certified copy of the commitment order to the board.
At the next meeting of the board held after the issuance of a warrant for the retaking of any offender, the board shall be notified thereof; and if the offender shall have been taken into custody, he shall then be given an opportunity to appeal to the board in writing or in person why his parole should not be revoked. The hoard may then, or at any time in its discretion, terminate such parole or modify the terms and conditions thereof In the event the board shall revoke parole, the offender shall serve the remainder of the sentence originally imposed unless at a later date the hoard shall think it expedient to grant the offender a second parole. In case a second parole shall not be granted, then the offender shall serve the remainder of the sentence originally imposed, and the time the offender was out on parole shall not be taken into account to diminish the time for which he was sentenced.
The chairman and each member of the board and the designated parole revocation hearing officer, in the discharge of their duties, are authorized to administer oaths, to summon and examine witnesses, and take other steps as may be necessary to ascertain the truth of any matter about which they may have the right to inquire.
(Current) § 47-7-27. Return of violator of parole or earned release. supervision; arrest of offender; hearing revocation of parole; imprisonment for technical violation to be served in technical violation center.
(1) The board may, at any time and upon a showing of probable violation of parole, issue a warrant for the return of any paroled offender to the custody of the department. The warrant shall authorize all persons named therein to return the paroled offender to actual custody of the department from which he was paroled.
(2) Any field supervisor may arrest an offender without a warrant or may deputize any other person with power of arrest by giving him a written statement setting forth that the offender has, in the judgment of that field supervisor, violated the conditions of his parole or earned-release supervision. The written statement delivered with the offender by the arresting officer to the official in charge of the department facility from which the offender was released or other place of detention designated by the department shall be sufficient warrant for the detention of the offender.
(3) The field supervisor, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation. The field supervisor shall at once notify the board or department of the arrest and detention of the offender and shall submit a written report showing in what manner the offender has violated the conditions of parole or earned-release supervision. An offender for whose return a warrant has *1240 been issued by the board shall, after the issuance of the warrant, be deemed a fugitive from justice.
(4) Whenever an offender is arrested'on a warrant for an alleged violation of parole as herein provided, the board shall hold an informal preliminary hearing within seventy-two (72) hours to determine whether there is reasonable cause to believe the person has violated a condition of parole. A preliminary hearing shall not be required when the offender is not under arrest on a warrant or the offender signed a waiver of a preliminary hearing. The preliminary hearing may be conducted electronically.
(5) The right of the State of Mississippi to extradite persons and return fugitives from justice, from other states to this state, shall not be impaired by this chapter and shall remain in full force and effect. An' offender convicted of a felony committed while on parole, whether in the State of Mississippi or another state, shall immediately have his parole revoked upon presentment of a certified copy of the commitment order to the board. If an offender is on parole and the offender is convicted of a felony for a crime committed prior to the offender being placed on parole, whether in the State of Mississippi or another state, the offender may have his parole revoked upon presentment of a certified copy of the commitment order to the board. ,(6)(a) The board shall hold a hearing for any parolee who is detained as a result of a warrant or a violation report within twenty-one (21) days of the parolee’s admission to detention. The board may, in its discretion, terminate the parole or modify the .terms and conditions thereof. If the board revokes parole for a technical violation the board shall impose a period of imprisonment to be served in a technical violation center operated by the department not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the board may impose a period of imprisonment to be served in a technical violation center for up to one hundred and eighty (180) days or the board may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the board may impose up to the remainder' of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner, (b) If the board does not hold a hearing or does not take action on the violation within the twenty-one-day time frame in paragraph (a) of this subsection, the parolee shall ■ be released from detention and shall return to parole status. The board may subsequently hold a hearing and may revoke parole or may continue parole and modify the terms and conditions of parole. If the board revokes parole for a technical violation the board shall impose a period of imprisonment to be served in a technical violation center operated by the department not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the board may impose a period of imprisonment to be served in a technical violation center for up to one hundred eighty (180) days or the board may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the board may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center .im *1241 posed under this section shall not be reduced in any manner.
(c) For a parolee charged with a technical violation who has not been detained awaiting the revocation hearing, the board may hold a hearing within a reasonable time. The board may revoke parole or may continue parole and modify the terms and conditions of parole. If the board revokes parole for a technical violation the board shall impose a period of imprisonment to be served in a -technical violation center operated by the department hot to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the board may impose a period of imprisonment to be served in a technical violation center for up to. one. hundred eighty (180) days or the board may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the board may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall- not be reduced in any manner.
(7) Unless good cause for the delay is established in the record of the proceeding, the parole revocation charge shall be dismissed if the revocation hearing is not held within the thirty (80) days of the issuance of the warrant.
(8) The chairman and each member of the board and the designated parole revocation hearing officer may, in the discharge of their duties, administer oaths, summon and examine witnesses, and take other steps as may be necessary to ascertain the truth of any matter about which they have the right to inquire.
(9)The board shall provide semiannually to the Oversight Task Force the number of warrants issued for an alleged violation of parole, the average time between detention" on a warrant and preliminary hearing, the average time between detention on a warrant and revocation hearing, the number of ninety-day sentences in a technical violation center issued by the board, the number of one-hundred-twenty-day sentences in a technical violation center issued by the board, the number of one-hundred-eighty-day sentences issued by the board, and the number and average length of the suspended sentences imposed by the board in response to a violation.

. Section 43 of House Bill 585 is codified at 'Mississippi Code Section 47-7-3.1. House Bill 585 is a comprehensive criminal-justice and corrections-reform bill that amended and added numerous provisions of state law. See H.B. 585 § 42, 2014 Leg. Reg. Sess. (Miss. 2014). The complete text of House Bill 585 is available' at: http://billstatus.ls.state.ms.us/ ' ' documehts/2014/pdf/HB/0500-05 99/HB058 5 SG.pdf (last visited December 6, 2016.)

. See appendix for full text of Mississippi Code Section 47-7-3.1.

. See appendix for full text of Mississippi Code Section 47-7-18.

. See appendix for both former and current Sections 47-7-27.